UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

TANISHA ROSS,

   Plaintiff,        Civil Action No. 15-12353
             Honorable Sean F. Cox
     v.         Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

   Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 11, 13]

Plaintiff Tanisha Ross appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's ("ALJ") decision is not supported by substantial evidence, and thus **RECOMMENDS**:

- **GRANTING** Ross's motion for summary judgment [R. 11];

- **DENYING** the Commissioner's motion [R. 13]; and

- **REMANDING** this case for further proceedings consistent with this report and recommendation.

## I.   BACKGROUND

### A.   Ross's Background and Disability Applications

Born May 2, 1981, Ross was 31 years old when she submitted her disability applications on May 23, 2012.  [R. 7-5, Tr. 186-198; R. 7-6, Tr. 226].  She last worked as a hair stylist in April 2012.  [R. 7-6, Tr. 220-21]. Ross alleges a disability onset date of April 3, 2012, claiming disability due to diabetes and lower back pain caused by degenerative disc and joint disease.  [*Id.*, Tr. 220, 226, 256].

After both disability applications were denied initially, Ross requested a hearing, which took place on November 20, 2013, and included testimony from Ross and a vocational expert ("VE").  [R. 7-2, Tr. 42-76].  In a March 10, 2014 written decision, the ALJ found Ross to be not disabled.  [*Id.*, Tr. 27-37].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Ross timely filed for judicial review. [*Id.*, Tr. 1-4; R. 1].

## B.    The ALJ's Application of the Disability Framework

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

3

claimant's RFC, age, education and work experiences, and determines

whether the claimant could adjust to other work. *Id.* The claimant bears

the burden of proof throughout the first four steps, but the burden shifts to

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health &*

*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Ross was not

disabled. At the first step, he found that Ross had not engaged in

substantial gainful activity since her alleged onset date. [R. 7-2, Tr. 29]. At

the second step, he found that Ross had the severe impairments of mild

spondylolisthesis[3] L4-L5 with retrolisthesis[4] L3-L4, degenerative disc

disease of the lumbar spine, episodic lumbar radiculopathy[5] and obesity.

[*Id.*]. The ALJ found that Ross's diabetes was a non-severe impairment,

and that none of her impairments, either alone or in combination, met or

medically equaled the severity of a listed impairment. [*Id.*, Tr. 30].

Between steps three and four, the ALJ found that Ross had the RFC

---

[3] "Spondylolisthesis is a condition in which one bone in your back . . . slides forward over the bone below it. It most often occurs in the lower spine . . . [and] can cause back pain and numbness or weakness in one or both legs." *See* http://www.webmd.com/back-pain/tc/spondylolisthesis-topic-overview.

[4] Retrolisthesis is a condition in which "a vertebra in [one's] spine becomes displaced and moves forward or backward." http://healthool.com/retrolisthesis/.

[5] "Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve." *See* http://www.medicinenet.com/radiculopathy/article.htm.

to perform "light work"[6]:

> except [she] can lift or carry 10 pounds frequently and 20
> pounds occasionally (from very little, up to 1/3 of 8-hour
> workday); [she] can stand and/or walk (with normal breaks) for
> a total of 6 hours in an 8-hour workday; [she] can sit (with
> normal breaks) for a total of 6 hours in an 8-hour workday; can
> perform pushing and pulling motions with the upper and lower
> extremities within the aforementioned weight restrictions; sit or
> stand alternatively every 30 minutes provided employee is not
> off task more than 10% of the workday; never climb ladders,
> ropes or scaffolds; occasionally climb ramps or stairs; and can
> occasionally climb, stoop, crouch, kneel, and crawl, but
> frequently balance; should avoid unprotected heights, hazards,
> or operating machinery; no commercial driving; work is limited
> to simple, routine, and repetitive unskilled tasks.

[R. 7-2, Tr. 30]. At step four, the ALJ found that Ross could not perform

past relevant work. [*Id.*, Tr. 35]. With the assistance of VE testimony, the

ALJ determined at step five that based on Ross's age, education, work

experience and RFC, she could perform the positions of office clerk, bench

assembly and packer, for which significant jobs existed in the economy.

[*Id.*, Tr. 36]. Thus, the ALJ found that Ross was not disabled.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds….[A] job is in this
category when it requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and pulling of arm or
leg controls. To be considered capable of performing a full or wide range of
light work, [a claimant] must have the ability to do substantially all of these
activities." § 404.1567(b); § 416.967(b).

5

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in

6

the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Ross argues that the RFC assessment is not supported by substantial evidence, and that the ALJ committed reversible error when he failed to obtain an updated medical opinion upon receiving new medical records to assess whether her impairments met or equaled a listing, failed to properly consider how her medication side effects impacted her ability to work, failed to include a function-by-function assessment in formulating the RFC, and failed to order a consultative psychological examination. The Court finds that the ALJ's RFC assessment and listing analysis are not supported by medical opinions, and that remand is necessary.

7

**B.**

In formulating Ross's RFC, the ALJ gave substantial weight to the July 16, 2012, consultative physical evaluation of Bina Shaw, M.D., who diagnosed Ross with type II diabetes and chronic lower back pain due to degenerative joint disease, and opined that she had no functional impairment and can sit, stand, walk, bend and lift 20-30 pounds without difficulty eight hours per day.  [R. 7-2, Tr. 32, citing R. 7-7, Tr. 265].  The ALJ also credited Lisa Mani, M.D., the state records reviewer, who issued a supplemental case analysis on November 13, 2012, summarizing Dr. Shaw's findings and stating that "[t]he RFC 4734[7] rating dated 07/31/2012 is affirmed as written."  [R. 7-2, Tr. 32; R. 7-7, Tr. 276].  Because both doctors offered their opinions without reviewing significant portions of the medical evidence – including results from MRIs, x-ray testing and physical therapy notes that were submitted after their opinions – their opinions are based on an incomplete picture of the record, and the ALJ's reliance on them is flawed.

On July 20, 2012, after Dr. Shaw's consultative evaluation, Ross presented to the Detroit Medical Center with lower back pain, and the

---

[7] It appears that "RFC 4734" is in reference to a standard Physical RFC Assessment form.  https://secure.ssa.gov/apps10/poms/images/SSA4/G-SSA-4734-U8-1.pdf.

8

attending physician, Anil Sethi, M.D., conducted a physical examination that revealed tenderness of the lumbar spine, weak motor strength in her left leg, and diminished sensation at the L3-L4 and L5 dermatomes in her left leg. [R. 7-9, Tr. 411].  Dr. Sethi ordered x-rays of Ross's lumbar spine, which showed grade 1 spondylolisthesis at L4-L5 with retrolisthesis at L3-L4, and a suggestion of spondylolysis at L5.  [*Id.*].  Since this examination post-dated Dr. Shaw's consultative evaluation, she did not have the benefit of reviewing this objective evidence when offering her opinion.

Nor did she have the benefit of reviewing the results of two subsequent MRI examinations.  An August 20, 2012, MRI of Ross's lumbar spine revealed left paracentral disc protrusion with associated annular fissure at L4-L5, bilateral facet arthropathy contributing to grade 1 anterolisthesis of L5 on S1, and severe left neural foraminal stenosis at L5-S1 with compression of the existing L5 nerve.  [R. 7-10, Tr. 550-51].  A July 24, 2013, MRI of her lumbar spine showed a pars defect at L5, with resultant grade 1 anterolisthesis of L5 in relationship to S1, and reactive/hypertrophic marrow changes; and a disc bulge along with mild to moderate facet hypertrophy and moderate bilateral neural foramina narrowing at L5-S1.  [R. 7-9, Tr. 513-14].  Despite the fact that Dr. Shaw conducted her physical evaluation of Ross approximately 20 months before

9

the decision in this case and her opinion was based on an incomplete

review of the record, the ALJ assigned substantial weight to her opinion.

[R. 7-2, Tr. 32].

      The ALJ also relied significantly on Dr. Mani's November 2012

supplemental case analysis, which pre-dates the second MRI.  Moreover,

although the Commissioner is correct that the August 2012 MRI exam was

completed before Dr. Mani reviewed the medical evidence, [R. 13, PgID

696], its assertion that Dr. Mani reviewed the results of that MRI is

inaccurate.

      The report for the August 2012 MRI is located in "Exhibit No. 10F" of

the administrative record, and can be found at R. 7-10, Tr. 550-51; the

"Court Transcript Index" indicates that Exhibit 10F was

"Attorney/Representative-Supplied Evidence," meaning that Ross's

attorney supplied the evidence to the Commissioner below.  [*See* R. 7-1,

PgID 29; R. 7-10, PgID 557].  Significantly, Ross was proceeding *pro se* at

the administrative level up until an April 17, 2013, hearing before the ALJ,

during which she requested an adjournment to secure representation.  [R.

7-2, Tr. 18-29; R, 7-4, Tr. 133].  Ross did not obtain counsel until May 24,

2013.  [R. 7-4, Tr. 134; R. 7-6, Tr. 250].  Thus, the report from her August

2012 MRI was not added to the record until sometime after May 24, 2013 –

10

well after Dr. Mani reviewed the medical evidence. Two letters that are included in Exhibit 10F confirm this finding. The first is dated June 4, 2013, and is from Ross's counsel requesting copies of medical records; the second is dated June 13, 2013, and is from a doctor's office to Ross's counsel, indicating the cost for copies of 38 pages of records. [R. 7-10, Tr. 554-55]. Notably, Exhibit 10F consists of 38 pages. [*Id.*, Tr. 518-55].

Similarly, although the x-rays of Ross's lumbar spine were taken on July 20, 2012, the x-ray results were not added to the record until after Dr. Mani completed her November 2012 case analysis. [R. 7-9, Tr. 411-12]. This is evident based on Dr. Mani's failure to even mention the x-ray results in her report, and is bolstered by two date stamps on the x-ray report: one on the bottom right corner indicating that the record request was printed on June 18, 2013, and the other on the very top of the page indicating that it was faxed on July 17, 2013. [*Id.*].

Thus, Dr. Mani, like Dr. Shaw, offered her opinion without reviewing the most significant portions of the medical record. Because they were not afforded an opportunity to review the complete record, the ALJ's reliance on their opinions in formulating Ross's RFC is unsustainable. Looking at Dr. Mani's opinion closer further undermines the ALJ's decision.

11

Although Dr. Mani stated that she was affirming "[t]he RFC 4734 rating dated 07/31/2012," [R. 7-7, Tr. 276], the record does not contain an RFC dated July 31, 2012. The only evidence in the record referencing that date is the Commissioner's initial disability determination, in which a single decision maker summarized Dr. Shaw's evaluation, indicated that there was no RFC assessment associated with this claim, and found that Ross had no severe impairments. [R. 7-3, Tr. 81-83, 87-89]. Disregarding this and assuming Dr. Mani was referring to Dr. Shaw's consultative evaluation – opining that Ross has no functional impairment and can sit, stand, walk, bend and lift 20-30 pounds without difficulty eight hours per day – does not save the ALJ's decision since Dr. Shaw's opinion was based upon an incomplete record.

Because no state agency physician or other medical consultant reviewed and offered an opinion regarding the limiting effects of the x-ray tests and MRI exams, the ALJ acted outside of his expertise and interpreted the objective medical evidence on his own in assessing Ross's RFC. This alone constitutes error. "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F.App'x 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). This caution applies

12

when ALJs are establishing RFCs.  "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data."  *Allen v. Comm'r of Soc. Sec.,* No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) *adopted by* 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases).

The Commissioner argues that the ALJ was not required to seek an updated medical opinion because he found that the July 2013 MRI, "when considered in conjunction with the other medical evidence, would not account for the severe pain alleged at the hearing by [Ross]."  [R. 13, PgID 697, citing R. 7-2, Tr. 33].  It contends that it was the ALJ's duty to determine if a new medical opinion was necessary, and that he "reasonably concluded" after considering the July 2013 MRI that "it would not alter the medical experts' findings, and therefore would not render the earlier state agency decision untenable."  [*Id.*, PgID 697-98].  In making this argument, the Commissioner is proceeding on the false assumption that Dr. Mani evaluated the August 2012 MRI exam.  In addition, the ALJ's wording – "This MRI, when considered in conjunction with other medical evidence, would not account for the severe pain alleged" – appears to be the ALJ's own assessment, not a reflection of the opinion of a physician.  The ALJ

13

was relying upon his own expertise to interpret the raw medical data in the record, contrary to the caution against doing so in *Allen*.  *See Allen*, 2013 WL 5676254, at *15-*16 ("Under these circumstances, an expert medical advisor is necessary to properly evaluate plaintiff's impairments, symptoms and functional limitations.").

The ALJ's error here is compounded by two additional factors.  First, in conjunction with determining that the July 2013 MRI would not account for the pain alleged by Ross, the ALJ cited Exhibit 12F, indicating that radiological studies from August 1, 2013, show minimal narrowing of the intervertebral disc space at L5-S1.  [R. 7-2, Tr. 33].  He appears to highlight these findings as evidence that Ross's back impairments are not as serious as the MRIs indicate.  This constitutes error for two reasons.  By comparing the results of these tests, the ALJ is inappropriately making "RFC conclusions from raw medical data."  *See Allen*, 2013 WL 5676254, at *15. More importantly, Exhibit 12F was redacted from the record "because it referenced another claimant."  [*See* R. 7-10, Tr. 559-72].  The Commissioner does not address the fact that the ALJ apparently relied in part on someone else's records.

Moreover, in discrediting the July 2013 MRI examination, the ALJ also stated that physical therapy notes show that Ross benefited from

14

several physical therapy sessions.  [R. 7-2, Tr. 33, citing R. 7-10, Tr. 591].

However, the ALJ ignored several statements, and objective test results, in

that same record indicating that Ross has numerous limitations, including

that her range of motion at lumbar spine was not within normal limits, her

muscle strength was 3/5, and she only met 3/11 (27 percent) of her goals.

[R. 7-10, Tr. 591].  An ALJ must consider all evidence in the record,

*Garner*, 745 F.2d at 388 and *Gentry*, 741 F.3d at 729, and the fact that the

ALJ ignored contradictory evidence in evaluating the raw medical data here

compounds his error of playing doctor.

Based on the foregoing, the ALJ's decision is not supported by

substantial evidence, and he erred in evaluating the raw medical data and

in failing to get an updated medical opinion.

### C.

On a related and no less important note, the lack of any medical

opinion on the issue of medical equivalence is in itself an error requiring

remand.  Social Security Ruling 96-6p "requires that the judgment of a

physician (or psychologist) designated by the Commissioner on the issue of

equivalence on the evidence before the administrative law judge or the

Appeals Council must be received into the record as expert opinion

evidence and given appropriate weight."  SSR 96-6p, 1996 WL 374180, at

15

*3. *See also Fowler v. Comm'r of Soc. Sec.*, No. 12–12637, 2013 WL 5372883, at *12-*13 (E.D. Mich. Sept. 25, 2013) (collecting cases) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

Here, the ALJ ostensibly relied on Dr. Shaw's and Dr. Mani's opinions at step three in finding that Ross did not have an impairment or combination of impairments that met or equaled a listed impairment.  [R. 7-2, Tr. 30 ("The medical opinion of the State agency and consultative physicians, all of whom considered the relevant Listings, support this finding.")].  But Dr. Shaw's consultative examination report does not show consideration of any listed impairment.  [*See* R. 7-7, Tr. 263-69].  And although Dr. Mani states that Ross's *diabetes* "is not characterized by events or critical episodes otherwise of listing level severity," she did not consider whether Ross's impairments related to her *back* – the impairments that the ALJ found to be severe – met or equaled a listing.  [*Id.*, Tr. 276; R. 7-2, Tr. 29].

This type of error may be considered harmless error when the evidence overwhelmingly demonstrates that the claimant's impairments are not equivalent to a given listing, (*see, e.g. Bukowski v. Comm'r of Soc. Sec.*, No. 13-CV-12040, 2014 WL 4823861 (E.D. Mich. Sept. 26, 2014)),

16

but such is not the case here.  "[C]ourts generally should exercise caution in conducting harmless error review in this context" because "it may be difficult, or even impossible, to assess . . . ."  *Rabbers*, 582 F.3d at 657-58. *See also Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (court lacked medical expertise to determine whether impairments met equivalency requirement).  The error is not harmless here especially because Dr. Shaw and Dr. Mani did not review relevant x-ray and MRI results.  Remand is necessary.[8]

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Ross's motion [R. 11] be **GRANTED**, the Commissioner's motion [R. 13] be **DENIED**, and the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 10, 2016

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

---

[8] Based on the foregoing, it is unnecessary to analyze Ross's remaining arguments.

17

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

18

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
